# EXHIBIT 1

```
1              IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

2                        SIXTH APPELLATE DISTRICT

3                              ---OOO---

4

5    THE PEOPLE OF THE STATE OF        )
     CALIFORNIA,                       )
                                       )
6          PLAINTIFF-RESPONDENT,       )
                                       )
7               VS.                    )      CASE NO. EE014916
                                       )
8    ISIDRO HERNANDEZ,                 )
                                       )
9          DEFENDANT-APPELLANT.        )
     _____)

10

11                             ---OOO---

12                 REPORTER'S TRANSCRIPT ON APPEAL

13            FROM THE JUDGMENT OF THE SUPERIOR COURT

14             OF THE STATE OF CALIFORNIA, IN AND FOR

15                 THE COUNTY OF SANTA CLARA

16         BEFORE THE HONORABLE RONALD T. LISK, JUDGE

17                             ---OOO---

18

19             PROCEEDINGS HELD ON DECEMBER 5, 2000

20                    PAGES 1 THROUGH 39

21                        VOLUME ONE

22

23   APPEARANCES:

24   FOR PLAINTIFF-RESPONDENT:     OFFICE OF THE ATTORNEY GENERAL
                                   BY:  WILLIAM LOCKYER, ATTORNEY
25                                 GENERAL OF THE STATE OF
                                   CALIFORNIA
26

27   FOR DEFENDANT-APPELLANT:      IN PROPRIA PERSONA

28
```

COPY

1          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2              IN AND FOR THE COUNTY OF SANTA CLARA

3      BEFORE THE HONORABLE RONALD T. LISK, JUDGE, AND A JURY

4                       SUNNYVALE FACILITY

5                       DEPARTMENT NO. 81

6

7      THE PEOPLE OF THE STATE OF          )
       CALIFORNIA,                         )           COPY
8                                          )
                 PLAINTIFF,                )
9                                          )
            VS.                            )     CASE NO.   EE014916
10                                         )
       ISIDRO HERNANDEZ,                   )
11                                         )
                 DEFENDANT.                )
12     _____)

13                          ---oOo---

14

15          REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             HELD ON DECEMBER 5, 2000

17                          ---oOo---

18

19

20
       APPEARANCES:
21
       FOR THE PEOPLE:            JAMES CAHAN
22                                DEPUTY DISTRICT ATTORNEY

23
       FOR THE DEFENDANT:         BARRY REKOON
24                                ATTORNEY AT LAW

25

26
       OFFICIAL COURT REPORTER:   MICHELE C. DAVIS, CSR
27                                CERTIFICATE NUMBER #6815

28

1                          MASTER INDEX

2                  DIRECT    CROSS    REDIRECT    RECROSS

3     PEOPLE'S:

4     DELFINA MUNOZ
        BY MR. CAHAN:      69
5       BY MR. REKOON:               96
        BY MR. CAHAN:                         113
6       BY MR. REKOON:                                    116

7

8     GUADALUPE DOE
        BY MR. CAHAN:      117
        BY MR. CAHAN:
9       (RESUMED)          153
        BY MR. CAHAN:
10      (CONTINUED)        169
        BY MR. REKOON:               196
11      BY MR. CAHAN:                         212
        BY MR. REKOON:                                    213

12

13    DELFINA MUNOZ
        BY MR. CAHAN:      214
14      BY MR. CAHAN:
        (RESUMED)          219
15      BY MR. REKOON:               226
        BY MR. CAHAN:                         226
16

17    CHRISTOPHER POWELL
        BY MR. CAHAN:      228
18      BY MR. REKOON:               240
        BY MR. CAHAN:                         242
19      BY MR. REKOON:                                    242
        BY MR. CAHAN:
20      (FURTHER)                             244

21

22    MARY LOU RITTER
        BY MR. CAHAN:      247
        BY MR. REKOON:               277
23      BY MR. CAHAN:                         280

24

25

26

27

28

```
1              INDEX OF WITNESSES (CON'T)

2              DIRECT    CROSS    REDIRECT    RECROSS

3    DEFENSE:
     (NO JURY)
4
     ANGELINA HERNANDEZ
5                         283

6    ANGELINA HERNANDEZ
       BY MR. REKOON:     287
7      BY MR. CAHAN:               305
       BY MR. REKOON:                        325
8      BY MR. CAHAN:                                      327

9
     JUDIT AGUILAR
10     BY MR. REKOON:     330
       BY MR. CAHAN:               332
11

12   JENNY TOLENTINO
       BY MR. REKOON:     335
13     BY MR. CAHAN:               339
       BY MR. REKOON:                        344
14

15   MIGUEL MORENO
       BY MR. REKOON:     379
16     BY MR. CAHAN:               384
       BY MR. REKOON:                        388
17


18
     PEOPLE'S:
19
     GUILLERMINA MUNOZ
20     BY MR. CAHAN:      389
       BY MR. REKOON:              395
21     BY MR. CAHAN:                         396

22
     GUADALUPE DOE
23     BY MR. CAHAN:      397

24

25

26                    ---oOo---

27

28
```

```
1                        INDEX OF EXHIBITS

2                                              IDENT.    EVID.

3      PEOPLE'S:

4      1   -    4 X 4 POSTER -  VICTIM            *       345

5      2   -    DIAGRAM  -  VAGINAL AREA          *       345

6      3   -    DIAGRAM  -  VAGINAL AREA          *       345

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    *   PREMARKED EXHIBIT

25

26                         ---OOO---

27

28
```

```
 1  SUNNYVALE, CALIFORNIA                    DECEMBER 5, 2000

 2                    P R O C E E D I N G S

 3           THE COURT:  THE COURT'S IN SESSION ON THE JURY

 4  TRIAL OF PEOPLE VERSUS ISIDRO HERNANDEZ.  JAMES CAHAN FOR

 5  THE PEOPLE.  BARRY REKOON FOR THE DEFENDANT.  THE DEFENDANT

 6  IS PRESENT BEFORE THE COURT.

 7           THIS CASE IS HERE FOR JURY TRIAL ON A FOUR COUNT

 8  INFORMATION CHARGING MR. HERNANDEZ IN COUNTS ONE, TWO AND

 9  THREE WITH FELONIES, 288(B)(1), AND COUNT FOUR, PENAL CODE

10  SECTION 269.  PUNISHMENT FOR COUNT FOUR, FIFTEEN YEARS TO

11  LIFE, IF TRUE.

12           THEREFORE, EACH SIDE IS ENTITLED TO HAVE TWENTY

13  PEREMPTORY CHALLENGES.  THE COURT HAS BEEN PROVIDED WITH A

14  WITNESS LIST BY THE PROSECUTION.

15           THE COURT'S ALSO BEEN ALERTED AS TO COUNT ONE.

16  THE PROSECUTION WILL PRESENT EVIDENCE UNDER 803(F) OF THE

17  PENAL CODE, AND THAT SAYS:  NOT WITHSTANDING ANY OTHER

18  LIMITATION OF TIME DESCRIBED IN THIS CHAPTER, A CRIMINAL

19  COMPLAINT MAY BE FILED WITHIN ONE YEAR OF THE DATE OF A

20  REPORT TO A REASONABLE ADULT -- I'M SORRY, TO A RESPONSIBLE

21  ADULT OR AGENCY, BY A CHILD UNDER EIGHTEEN YEARS OF AGE,

22  THAT THE CHILD WAS A VICTIM OF, AND IT LISTS 288 AND 289.

23           THE DEFINITION OF A RESPONSIBLE ADULT MEANS A

24  PERSON REQUIRED TO REPORT SUCH SAID OFFENSES.

25           NOW, LET'S START WITH FIRST THINGS FIRST.  AS YOU

26  KNOW, THE COURT EXCLUDES ALL WITNESSES AND ORDERS THEM NOT

27  TO DISCUSS THEIR TESTIMONY OR ALLOW ANYONE TO DISCUSS THEIR

28  TESTIMONY WITH THEM.  THAT'S THE FIRST ORDER OF BUSINESS.
```

1    MR. CAHAN:  YOUR HONOR, IF I MAY BE HEARD?

2    THE COURT:  NOT YET.

3    MR. CAHAN:  I'M SORRY?

4    THE COURT:  NOT YET.

5    MR. CAHAN:  OKAY.

6    THE COURT:  NOW, YOUR VICTIM, WHEN SHE TESTIFIES

7    I'M SURE SHE'S ENTITLED TO A SUPPORT PERSON.

8    MR. CAHAN:  THANK YOU, YOUR HONOR.

9    THE COURT:  WILL THE SUPPORT PERSON BE A RELATIVE?

10    MR. CAHAN:  YES, YOUR HONOR, IT IS.

11    THE COURT:  IS THAT PERSON GOING TO TESTIFY?

12    MR. CAHAN:  YES, YOUR HONOR.

13    THE COURT:  SO THE SUPPORT PERSON TESTIFIES FIRST?

14    MR. CAHAN:  YES, YOUR HONOR.

15    THE COURT:  THANK YOU.

16    IN ADDITION, THE DEFENDANT IS IN CUSTODY.

17    MR. REKOON, DID YOU WANT IT BROUGHT TO THE JURY'S

18    ATTENTION THE FACT THAT HE IS IN CUSTODY OR NOT?

19    MR. REKOON:  ONLY IF IT BECOMES OBVIOUS.

20    USUALLY --

21    THE COURT:  I DON'T BRING IT UP IF YOU DON'T WANT

22    ME TO.  AS YOU KNOW, WE DO EVERYTHING WE CAN, WE LOCK THE

23    DOORS, PULL THE SHADES, IF YOU WILL.  AND WHEN THE JURY

24    TAKES A BREAK WE LOCK THE COURTROOM, AND PULL THE SHADES,

25    AND THE DEFENDANT GOES TO THE RED ROOM HERE TO THE SIDE.

26    HE'S DRESSED BEFORE THEY COME IN.

27    MR. REKOON:  WELL, I STILL FEEL MORE COMFORTABLE

28    WITH AN ADMONISHMENT THAT BECAUSE HE IS IN CUSTODY NO

1  INFERENCE IS TO BE DRAWN.

2          THE COURT:  I CAN DO THAT.  THANK YOU.

3          ALSO, THE ISSUE OF AN INTERPRETER IN THE SPANISH

4  LANGUAGE.

5          MR. REKOON:  MY CLIENT ADVISES ME HE DOES NOT

6  REQUIRE THE SERVICES OF AN INTERPRETER TO UNDERSTAND THE

7  TESTIMONY.  HOWEVER, IF HE SHOULD DESIRE TO TESTIFY, HE

8  WOULD THEN REQUEST THE SERVICES OF THE INTERPRETER SO THAT

9  HE COULD BE MORE FULLY AND COMPLETELY UNDERSTOOD IN HIS

10  NATIVE LANGUAGE.  SO WE WOULD REQUEST THE INTERPRETER ONLY

11  IF HE CHOOSES TO TESTIFY.

12          THE COURT:  ALL RIGHT.  THAT WILL BE FINE THEN.

13  SO ORDERED.

14          MR. REKOON, DID YOU HAVE ANY OTHER IN LIMINE

15  ISSUES THAT YOU WANTED TO DISCUSS AT THIS TIME REGARDING

16  MOTIONS IN LIMINE?

17          MR. REKOON:  I HAVE NONE.  I'M BASICALLY WAITING

18  TO RESPOND TO THE PEOPLE'S.

19          THE COURT:  ALL RIGHT, MR. CAHAN, GO AHEAD.

20          MR. CAHAN:  THANK YOU, YOUR HONOR.

21          I'LL START WITH THE EASIER ONE, I HOPE, AND THAT

22  IS THAT THE PEOPLE ANTICIPATE THAT ONE OF OUR POSSIBLE

23  WITNESSES IS MR. CARL LEWIS, WE ANTICIPATE HIM TO TESTIFY ON

24  THE CHILD SEXUAL ACCOMMODATION TESTIMONY.  I JUST WANTED TO

25  MAKE SURE THAT COUNSEL AND THE COURT WAS AWARE OF THAT.  I

26  DON'T ANTICIPATE ANY PROBLEMS.  I DON'T EXPECT HIM TO GO

27  PAST THE SYNDROME.  I EXPECT, IF THE COURT SO DESIRES, THE

28  JURY WILL BE SO ADMONISHED AS TO THE LIMITATIONS OF THE USE

```
1    OF THE SYNDROME.  AND I JUST WANTED TO MAKE THE COURT AWARE

2    OF THAT.

3              THE COURT:  IT'S COVERED BY CALJIC, I FORGOT THE

4    NUMBER.  DO YOU KNOW THE NUMBER OFFHAND?

5              MR. CAHAN:  NOT OFFHAND, YOUR HONOR.

6              THE COURT:  MR. LEWIS TESTIFIED IN THIS DEPARTMENT

7    I THINK FIVE OR SIX WEEKS AGO ON THE SAME TYPE OF CHARGE

8    INVOLVING ANOTHER DEFENDANT.

9              MR. CAHAN:  THE COURT MAY WANT TO LOOK AT LIKE

10   10.64.

11             THE COURT:  I THINK THAT'S RIGHT.

12             YES, IT'S CALJIC 10.64.  AND WHAT THE COURT DID

13   BEFORE IS THAT RIGHT AFTER THE VOIR DIRE REGARDING

14   SUFFICIENT TESTIMONY AS TO WHETHER OR NOT THE WITNESS

15   QUALIFIES AS AN EXPERT IN THE FIELD IN WHICH HE OR SHE'S

16   ABOUT TO TESTIFY, THE COURT THEN READS THIS INSTRUCTION TO

17   THE JURY BEFORE THE SYNDROME ISSUE IS DISCUSSED.

18             MR. CAHAN:  THANK YOU, YOUR HONOR.

19             THE COURT:  WHAT ELSE, MR. CAHAN.

20             MR. CAHAN:  YOUR HONOR, THE REST OF THE PEOPLE'S

21   MOTIONS ARE BASICALLY AS DEFENSE HAS ALLUDED TO, MOTIONS TO

22   LIMIT TESTIMONY THAT SEEMS TO BE OFFERED BY THE DEFENSE.  I

23   HAVE A WRITTEN MOTION REGARDING THE ALLEGATION THAT THE

24   VICTIM'S STEPFATHER, NOT THE DEFENDANT, BUT THE STEPFATHER

25   MOLESTED THE VICTIM.  AND THE PEOPLE WOULD MOVE TO EXCLUDE

26   ANY REFERENCE OF THAT UNDER 1103, 782, 352 AND 1220.  I DO

27   HAVE A WRITTEN MOTION ON THAT IF THE COURT SO DESIRES.

28             THE COURT:  THE DEFENSE IS WHAT, IN THIS CASE,
```

1    SOME OTHER PERSON DID IT?

2         MR. CAHAN:  I'M NOT SURE.  THERE WERE INITIAL

3    REPRESENTATIONS -- BEFORE WE ARRIVED IN THIS COURT, THERE

4    WERE REPRESENTATIONS THAT PERHAPS THE PHYSICAL DAMAGE TO THE

5    VICTIM'S VAGINAL AREA WAS DUE TO THE STEPFATHER AND NOT THE

6    DEFENDANT.

7         SINCE THAT TIME, WE'VE INTERVIEWED THE VICTIM AND

8    DISCLOSED THAT REPORT.  THERE IS NO INDICATION THAT ANY

9    ALLEGED CONDUCT BY THE STEPFATHER COULD HAVE CREATED SUCH

10   INJURIES.  AND SO I DON'T KNOW WHETHER THAT'S STILL THE

11   DEFENSE INTENT.

12        THE COURT:  WAS THERE ANY REPORTED MISBEHAVIOR BY

13   THE STEPFATHER OF THE VICTIM TO LAW ENFORCEMENT?

14        MR. CAHAN:  YES, YOUR HONOR.

15        THE COURT:  WHAT WAS THE DATE OF THAT?

16        MR. REKOON:  ABOUT A WEEK PRIOR TO THE ALLEGATIONS

17   SURFACING AGAINST MR. HERNANDEZ.

18        MR. CAHAN:  REPORTED TO SAN JOSE POLICE DEPARTMENT

19   ON JULY 12TH OF THIS YEAR.

20        THE COURT:  AND I NOTE THAT IT WAS REPORTED --

21   WHAT PERIODS?  TO WHAT DATES DID IT COVER, THE DATES OF THE

22   ALLEGED MISBEHAVIOR BY THE STEPFATHER?

23        MR. CAHAN:  MARCH 5TH TO MARCH 10TH.  ACTUALLY, I

24   APOLOGIZE, YOUR HONOR.  THERE IS ANOTHER REPORT THAT'S DATED

25   MARCH 10TH.  AND LOOKING AT THE CONTENTS OF THE REPORT, THE

26   INCIDENT OCCURRED MARCH 5TH OF THIS YEAR.

27        THE COURT:  AND IT'S REPORTED AROUND MARCH?

28        MR. CAHAN:  10TH.

```
1                THE COURT:  MARCH 10TH?

2                MR. CAHAN:  YES, YOUR HONOR.

3                THE COURT:  OF THIS YEAR?

4                MR. CAHAN:  YES, YOUR HONOR.

5                THE COURT:  NOW, I NOTE IN THE COMPLAINT,

6    MR. REKOON, BEFORE THE COURT, THE ALLEGED EVENTS BETWEEN THE

7    DEFENDANT AND THE VICTIM ARE FROM '92 TO '95, '97, '98, '99.

8    I DON'T SEE ANY OFFENSE THAT WOULD HAVE OCCURRED IN THE YEAR

9    2000.

10               NOW, THE STEPFATHER, HAS HE BEEN ARRESTED AND

11   CONVICTED OR JUST ARRESTED?

12               MR. CAHAN:  NO, YOUR HONOR, HE WAS INTERVIEWED.

13   I'M NOT SURE IF HE WAS ARRESTED, BUT NO COMPLAINT WAS ISSUED

14   AGAINST THE STEPFATHER.

15               THE COURT:  DID HE HAVE ACCESS TO THIS VICTIM IN

16   '92 THROUGH '99, DO YOU KNOW?

17               MR. REKOON:  NO.

18               MR. CAHAN:  NO, YOUR HONOR.

19               THE COURT:  NO.

20               MR. CAHAN:  AND THE CONDUCT DESCRIBED BY BOTH THE

21   VICTIM AND THE STEPFATHER COULD NOT HAVE CREATED THE

22   PHYSICAL DAMAGE VIEWED BY THE PHYSICIAN'S ASSISTANT MARY

23   RITTER AT VMC?

24               THE COURT:  WHEN WAS THAT?  WHEN WAS THE

25   EXAMINATION DATE OF THAT -- STRIKE THAT.

26               WHAT WAS THE DATE OF THE EXAMINATION BY

27   MS. RITTER?  WHEN WAS THE EXAMINATION DATE?  THAT SEEMS TO

28   BE THE KEY.
```

```
1          MR. CAHAN:  WELL, YOUR HONOR, I THINK IT WAS
2    SLIGHTLY -- THERE IS A DATE OF MAY 23RD OF THIS YEAR -- OH,
3    DATE OF EXAMINATION - MAY 19TH OF THIS YEAR.
4          THE COURT:  DOESN'T THAT SEEM TO BE EVIDENCE THAT
5    ALLOWS THE DEFENDANT TO SAY THAT THE EVIDENCE THAT WAS
6    DISCOVERED ON THAT DAY IS ATTRIBUTABLE -- CAN BE ARGUED IT'S
7    CAUSED BY THE STEPFATHER FOR THE BEHAVIOR HE HAD WITH THE
8    VICTIM BETWEEN MARCH -- AROUND MARCH OF THE SAME YEAR?
9          MR. CAHAN:  NO, YOUR HONOR.  THE FACT THAT THE
10   EXAMINATION WAS DONE AFTER THE MOLEST DOESN'T SPEAK AT ALL
11   TO THE PHYSICAL CONDUCT CONSTITUTED IN THAT MOLEST.  THE
12   FACT THAT THE STEPFATHER PLACED HIS HANDS OUTSIDE THE
13   CLOTHING, ON HER BUTTOCKS, COULD NOT IN ANY CONCEIVABLE WAY
14   HAVE CREATED DAMAGE TO THE VAGINAL AREA OF THE VICTIM.
15         SO THE FACT THAT A 288(A) MAY OR MAY NOT HAVE
16   OCCURRED DOES NOT SPEAK TO THE 269 DAMAGE CREATED IN '99.
17         THE PHYSICAL CONDUCT OF THE STEPFATHER BY
18   EVERYBODY CONCERNED --
19         THE COURT:  LET'S ASSUME FOR ARGUMENT THAT THE
20   YOUNG GIRL IS IN DENIAL, THAT, IN FACT, THE STEPFATHER DID
21   MORE THAN WHAT SHE SAID, AND SHE SUFFERED SUCH A MOLEST
22   OFFENSE AGAINST MR. HERNANDEZ, THAT SHE'S TRYING TO INDICATE
23   OR INSINUATE THAT SOMEHOW STEPFATHER DIDN'T DO IT,
24   MR. HERNANDEZ DID, WHEN, IN FACT, THE TROUBLE IS, THE DAMAGE
25   IS DISCOVERED.
26         IS THERE TESTIMONY THAT THE DAMAGE ITSELF HAS BEEN
27   THERE FOR AN EXTENSIVE PERIOD OF TIME?
28         IS MS. RITTER QUALIFIED ENOUGH, BASED UPON HER
```

```
1   TRAINING AND EXPERIENCE IN THE ANATOMY AND PHYSIOLOGY, THAT

2   THIS PARTICULAR TYPE OF INJURY HAS BEEN THERE FOR SOME

3   PERIOD OF TIME?

4           MR. CAHAN:  YOUR HONOR, THE ONLY THING I CAN DO,

5   IF THE COURT WILL ALLOW ME A MOMENT, IS --

6           THE COURT:  GO AHEAD.

7           MR. CAHAN:  YOUR HONOR, I HAVE HALF AN ANSWER TO

8   THE COURT'S QUESTION.

9           THE COURT:  GO AHEAD.

10          MR. CAHAN:  IN A BRIEF DISCUSSION WITH MS. RITTER,

11  A LONG TIME AGO, SHE DID INDICATE TO ME THAT THE INJURY WAS

12  NOT RECENT.  AND I THINK I HAVE IN MY NOTES, NOT WITHIN A

13  WEEK OR TWO, I DON'T KNOW HOW MUCH MORE SHE CLARIFIED THAT

14  UPON FURTHER QUESTIONING.

15          THE COURT:  NOW, THIS MAY HAVE TO BE RESOLVED IN

16  ANOTHER WAY.  MR. REKOON, AS YOU KNOW, UNDER 782, AS CITED

17  BY THE PROSECUTION, IT REQUIRES THAT YOU GIVE THIRTY DAYS

18  NOTICE.  I BELIEVE IT'S THIRTY DAYS NOTICE THAT YOU INTEND

19  TO OFFER PROOF, EVIDENCE OF SEXUAL CONDUCT OF THE

20  WITNESS, OF THE WITNESS, IN ATTACKING THE CREDIBILITY OF THE

21  WITNESS.

22          NOW, I DON'T BELIEVE YOU'RE DOING THAT, ARE YOU?

23          MR. REKOON:  NO.

24          THE COURT:  SO IT WOULD APPEAR THAT 782 DOESN'T

25  REALLY APPLY, MR. CAHAN.  LET ME FIND OUT.

26          ARE YOU GOING TO ATTEMPT TO ELICIT FROM THE

27  TESTIMONY OF THIS WITNESS OR YOUR OWN WITNESSES, THAT, IN

28  FACT, ANOTHER PERSON HAS BEEN ACCUSED OF MOLESTING THIS
```

1    CHILD ON THE DATES OF, SAY, MARCH OF 2000?

2        MR. REKOON:  YES, I INTEND TO GO INTO IT WITH

3    DELFINA MUNOZ, THE MOTHER OF THE VICTIM, WITH GUADALUPE

4    MUNOZ, ALSO WITH JUAN MUNOZ, WHO IS DELFINA'S BROTHER, WHO

5    DELFINA SPOKE OF THIS INCIDENT -- SPOKE TO HIM ABOUT THE

6    INCIDENTS.

7        BUT IT ALSO TIES INTO A LARGER THEORY.

8        THE COURT:  GO AHEAD.

9        MR. REKOON:  THAT DELFINA MUNOZ, THE MOTHER, WAS

10    ESSENTIALLY KICKED OUT OF ISIDRO HERNANDEZ'S RESIDENCE

11    SEVERAL WEEKS BEFORE THE ALLEGATION SURFACED.  AND IT'S OUR

12    POSITION THAT THE ALLEGATIONS ARE A -- ARE IN REVENGE FOR

13    HAVING BEEN THROWN OUT OF THE HOUSE.

14        AND IT WAS AT THAT TIME, ROUGHLY THE SAME TIME,

15    THAT THE ALLEGATIONS SUDDENLY SWITCHED FROM THE STEPFATHER

16    TO ISIDRO HERNANDEZ.

17        THE COURT:  THIS WAS REPORTED -- THE INCIDENTS

18    INVOLVING MR. HERNANDEZ WAS REPORTED WHEN, MR. CAHAN?

19        MR. CAHAN:  MARCH 21ST.

20        THE COURT:  MARCH 21ST.

21        WAS IT REPORTED SHORTLY THEREAFTER THE MARCH 5TH,

22    SAME AGENCY, OR WAS IT REPORTED BY A DIFFERENT AGENCY?  THEN

23    YOUR EVIDENCE SHOWS THAT THIS CHILD MAY HAVE BEEN MOLESTED

24    BY TWO SEPARATE PERSONS, ON SEVERAL DIFFERENT DATES?

25        MR. CAHAN:  YES, YOUR HONOR.

26        THE COURT:  YOU ARE ASKING THE COURT TO EXCLUDE

27    ANY TESTIMONY REGARDING ANY ALLEGED MOLESTATION BY SOMEONE

28    OTHER THAN THE DEFENDANT?

```
1              MR. CAHAN:  YES, YOUR HONOR, AND IF I MAY BE

2     HEARD?

3              THE COURT:  GO AHEAD.

4              NOW, YOU CITE 1103?

5              MR. CAHAN:  YES, SIR.

6              THE COURT:  WHICH PART OF 1103 ARE YOU CITING?  IT

7     HAS SEVERAL PARTS.

8              MR. CAHAN:  YES, YOUR HONOR.  SUBSECTION (C)(1).

9              THE COURT:  ALL RIGHT.  CONTINUE, MR. CAHAN, I'M

10    SORRY.  SORRY FOR THE INTERRUPTION.  GO AHEAD.

11             MR. CAHAN:  YES, YOUR HONOR.

12             THE COURT:  1103 TALKS ABOUT CHARACTER TRAIT OF

13    THE VICTIM?

14             MR. CAHAN:  YES, YOUR HONOR.  THAT'S THE POINT,

15    YOUR HONOR, IT SEEMS TO THE PEOPLE --

16             THE COURT:  THAT'S NOT A CHARACTER TRAIT TO BE A

17    VICTIM OF A MOLEST.  I MEAN, THAT'S NOT A CHARACTER.

18             MR. CAHAN:  YOUR HONOR, IT'S SEXUAL CONDUCT.

19             THE COURT:  OF THE VICTIM?

20             MR. CAHAN:  YES, YOUR HONOR.  IT'S NOT TO SAY THAT

21    THE VICTIM WAS WILLING.  IT'S NOT TO SAY THAT THE VICTIM WAS

22    ANYTHING, BUT IT TALKS ABOUT SEXUAL CONDUCT.

23             THE COURT:  DOESN'T THAT IMPLY CONSENSUAL SEXUAL

24    CONDUCT?

25             MR. CAHAN:  NO, YOUR HONOR.

26             AND WHAT I'M SAYING, YOUR HONOR, IS THAT DEFENSE

27    IS HARD-PRESSED TO SAY THAT THEY ARE TRYING TO USE THIS

28    NEITHER FOR CREDIBILITY, NOR FOR CHARACTER, BECAUSE BY
```

1    VIRTUE OF DEFENSE'S OWN RECITATIONS TO THIS COURT, IF

2    DEFENDANT WANTS TO PUT FORWARD A THEORY THAT THE MOTHER IS

3    PUTTING THEIR CHILD UP TO THIS BECAUSE SHE WAS KICKED OUT OF

4    THE HOUSE, SO BE IT.  IF THAT'S WHAT THEY WANT TO SAY AND

5    THEY WANT TO ASK QUESTIONS IN THAT REGARD.

6              THERE ARE FACTUAL ASPECTS THAT SHE WAS MARRIED,

7    APPARENTLY, AND THAT SHE DID KEEP IT A SECRET FROM THE

8    DEFENDANT, SUCH AS LIFE.

9              HOWEVER, WHAT THAT HAS TO DO WITH THE STEPFATHER

10   PUTTING HIS HANDS OUTSIDE THE CLOTHING OF THE VICTIM, ON HER

11   BUTTOCKS, IS HARD FOR THE PEOPLE TO SEE IF IT DOESN'T SPEAK

12   TOWARDS THE VICTIM'S CREDIBILITY.  DEFENSE IS SAYING THAT

13   THE VICTIM IS LYING ABOUT THE DEFENDANT RAPING HER AND IS

14   TRANSFERRING THIS MOLEST.

15             NOW, THERE ARE TWO PROBLEMS WITH THAT.  THAT

16   AUTOMATICALLY SPEAKS TO THE CREDIBILITY OF THE VICTIM, IN

17   WHICH CASE 782 COMES SCREAMING IN.

18             AND, SECOND OF ALL, AND I HESITATE TO REPEAT

19   MYSELF, YOUR HONOR, THERE IS REPRESENTATIONS BY THE

20   VICTIM -- THERE IS REPRESENTATIONS BY THE STEPFATHER THAT

21   THE PHYSICAL CONDUCT ALLEGED BY THE STEPFATHER COULD NOT

22   POSSIBLY HAVE CREATED THE PHYSICAL DAMAGE VIEWED BY

23   MS. RITTER.

24             THE COMBINATION OF THOSE TWO ASPECTS, BOTH THE

25   FACT THAT'S BEING ATTACKED FOR CREDIBILITY; AND, SECOND,

26   THAT THE PHYSICAL DAMAGE COULDN'T HAVE POSSIBLY BEEN

27   CREATED; THERE IS NO RELEVANCE TO THE STEPFATHER'S

28   PREJUDICIAL INFLAMMATORY CONDUCT AND THAT CAN ONLY MISLEAD

1   AND CONFUSE THIS JURY UNDER 352.

2          THE COURT:  WELL, 782 REQUIRES THAT THE DEFENDANT,

3   IF HE'S ATTEMPTING TO ATTACK THE VICTIM'S CREDIBILITY --

4          MR. CAHAN:  YES.

5          THE COURT:  -- WITH THE FOLLOWING - THAT, AND,

6   MR. REKOON HAS BEEN KIND ENOUGH TO MAKE AN OFFER OF PROOF

7   THAT HE WOULD INQUIRE OF DELFINA MUNOZ, GUADALUPE MUNOZ, AND

8   JUAN MUNOZ, THE GENERAL AREA OF EXAMINATION WOULD BE, ISN'T

9   IT TRUE THAT WHEN MR. HERNANDEZ FOUND OUT ABOUT YOUR

10  MARRIAGE OR OTHER RELATIONSHIP WITH ANOTHER MAN, HE

11  FORCIBLY, OR -- NOT FORCIBLY, BUT REMOVED YOU FROM HIS HOME,

12  AND AS A RESULT OF THAT YOUR RETALIATION IS SUCH THAT YOU

13  FABRICATED THESE CHARGES AGAINST HIM WHEN, IN FACT, IT WAS

14  SOMEONE ELSE THAT WAS INVOLVED.

15         MR. CAHAN:  DO ALL OF THAT WITHOUT THE SOMEONE

16  ELSE, FIRST OF ALL.  AND SECOND OF ALL, THAT IT'S HEARSAY IN

17  TERMS OF ASKING ANYONE, OTHER THAN THE VICTIM, WHAT THE

18  STEPFATHER DID.

19         THE COURT:  THAT'S CORRECT.  I MEAN, HE INDICATED

20  HE WAS GOING TO ASK JUAN MUNOZ HAD HE HEARD DELFINA SAY

21  SOMETHING.

22         MR. CAHAN:  AND THIRD OF ALL, YOUR HONOR, 78 --

23  782 REQUIRES A WRITTEN MOTION.

24         THE COURT:  AND I DON'T HAVE THAT.

25         MR. CAHAN:  NO, YOUR HONOR.  SO, AGAIN, IT'S

26  SPEAKING ALL TOWARDS CREDIBILITY OF THE WITNESS, AND IT

27  DOESN'T SEEM THAT THE LAW NOR THE PRINCIPLES OF RELEVANCE

28  HAVE BEEN COMPLIED WITH.

```
 1          THE COURT:  THAT'S WHAT IT SEEMS TO SAY.  NOT WHAT
 2   IT SEEMS TO SAY, THIS IS WHAT IT SAYS:  THAT IF EVIDENCE OF
 3   SEXUAL CONDUCT OF THE COMPLAINING WITNESS IS OFFERED TO
 4   ATTACK THE CREDIBILITY OF THIS PERSON, THE FOLLOWING
 5   PROCEDURE, QUOTE, SHALL BE FOLLOWED.
 6          MR. REKOON:  WE'RE NOT OFFERING IT TO ATTACK HER
 7   CREDIBILITY ON THE ISSUE OF WHETHER SHE WAS MOLESTED BY HER
 8   STEPFATHER.
 9          THE COURT:  YOU ARE CLAIMING, THOUGH, THAT
10   SHE'S -- DID YOU, AS AN OFFER OF PROOF, INDICATED THAT WHEN
11   SHE REPORTED HER STEPFATHER MOLESTED HER, SHE ALSO THEN
12   LATER ON INDICATED THAT MR. HERNANDEZ ALSO DID THE SAME
13   THING?
14          MR. REKOON:  AT A LATER DATE.
15          THE COURT:  AT A LATER DATE.
16          THEN WHAT RELEVANCY WOULD THE FACT THAT HER
17   STEPFATHER HAD MOLESTED HER THEN, IF IT WASN'T TO ATTACK HER
18   CREDIBILITY?
19          MR. REKOON:  IT'S TO ATTACK HER CREDIBILITY ON THE
20   ISSUE OF WHETHER MR. HERNANDEZ MOLESTED HER, NOT IN TERMS OF
21   THE STEPFATHER.
22          THE COURT:  RIGHT.  THAT'S WHAT 782 COMPREHENDS,
23   THAT THIS IS EVIDENCE OF THE COMPLAINING WITNESS'S SEXUAL
24   CONDUCT.  IT CAN BE ATTACKED UNDER 782, IF YOU -- IF YOU
25   FOLLOW THE PROCEDURAL REQUIREMENTS OF 782.
26          MR. REKOON:  BUT YOU DON'T CONSIDER THIS EVIDENCE
27   OF HER SEXUAL CONDUCT?  TO ME, SEXUAL CONDUCT IS SOMETHING
28   THAT A PERSON WILLFULLY UNDERTAKES AND WILLFULLY GOES INTO.
```

1          THE COURT:  THAT'S WHAT I ALSO THOUGHT, TOO.  BUT,

2     YES, ONE MIGHT THINK CONDUCT WOULD IMPLY THE VICTIM'S OR

3     WITNESS'S SEXUAL CONDUCT WOULD BE ALL OF THE CONSENSUAL

4     NATURE, WHEN, IN FACT, IT DOESN'T SAY IN THE STATUTE THAT

5     IT'S ALWAYS CONSENSUAL, IT JUST SAYS SEXUAL CONDUCT.

6          KEEP IN MIND, BECAUSE THIS STATUTE IS ALSO THERE

7     TO PROTECT PERSONS WHO ARE FALSELY ACCUSED OF FELONY

8     OFFENSES WHEN THERE IS EVIDENCE BROUGHT OUT BY THE COMMENT

9     THAT THIS PERSON HAVING CONSENSUAL CONDUCT WITH HIM OR

10    OTHERS, AND THEN COMPLAINED THAT OTHERS HAD FORCIBLE CONDUCT

11    WITH HIM OR HER.

12          MR. REKOON:  BUT CONDUCT, THE WORD ITSELF IMPLIES

13    AN AFFIRMATIVE ACT BY THE PERSON SO ENGAGED, NOT THE -- I

14    DON'T BELIEVE IT CONTEMPLATED THE VICTIM OF A MOLEST AS

15    HAVING ENGAGED IN SEXUAL CONDUCT.

16          THE COURT:  THEN, AGAIN, IF THIS COURT AGREES WITH

17    YOU, AND IT'S NOT THAT I DON'T DISAGREE, BUT IF THIS COURT

18    AGREES WITH YOU, AS YOU CORRECTLY INTERPRET THE STATUTE, IT

19    SAYS CORRECTLY, IF EVIDENCE OF SEXUAL CONDUCT OF THE

20    COMPLAINING WITNESS, THAT WOULD IMPLY THAT THIS WITNESS'S

21    SEXUAL CONDUCT WAS OF A CONSENSUAL NATURE WITH OTHERS, THEN

22    782 WOULD BAR YOU FROM USING THIS UNLESS YOU COMPLIED WITH

23    THE PROCEDURAL SECTIONS.

24          NOW, IF THE COURT RULES THAT 782 DOESN'T APPLY,

25    1103 DOESN'T APPLY, THEN THE COURT HAS TO GO TO WHAT WE CALL

26    780 OF THE EVIDENCE CODE THEN, FOR THE ATTACK ON

27    CREDIBILITY, THAT'S THE -- BASICALLY, 780 IS THE CALJIC

28    INSTRUCTION THAT ONE TELLS THE JURY.  AND IT TALKS ABOUT THE

1    EXISTENCE OR NON-EXISTENCE OF A BIAS, INTEREST, OR OTHER

2    MOTIVE.   STATEMENTS MADE BY THE PERSON THAT ARE

3    CONSISTENT OR INCONSISTENT, ET CETERA.

4         YOUR OFFER, MR. REKOON, IS THAT YOU WOULD TEND TO

5    IMPEACH THIS WITNESS UNDER 780 OF THE EVIDENCE CODE?

6         MR. REKOON:   YES, IT WOULD BE 780.   AND ALSO, IN

7    MORE GENERAL TERMS, TO COUNTER THE DISTRICT ATTORNEY'S CLAIM

8    THAT THE INCIDENT WITH THE STEPFATHER COULD NOT POSSIBLY

9    HAVE CAUSED THE DAMAGE TO THE VAGINAL AREA, OUR POSITION IS

10   COUNTER TO THAT.   THAT THERE ARE STATEMENTS GIVEN BY BOTH

11   DELFINA AND GUADALUPE REGARDING THE NATURE OF THAT INCIDENT,

12   THAT LEADS ONE TO BELIEVE THAT IT WASN'T MERELY HANDS ON

13   CLOTHING, TOUCHING.

14        THE COURT:   WELL, AS DIRECTED BY THE USE-NOTE IN

15   780, IT SAYS, QUOTE, THAT IF THE EXTRINSIC EVIDENCE, WHICH

16   THERE IS EXTRINSIC EVIDENCE OF SOMEONE ELSE, GOES TO A

17   SUBSTANTIVE ISSUE IN THIS CASE, IN ADDITION TO IMPEACH A

18   WITNESS, THE COURT MAY NOT FIND IT PERTAINS TO A COLLATERAL

19   MATTER.   HOWEVER, WHERE THE ONLY PURPOSE OF THE EXTRINSIC

20   EVIDENCE IS TO IMPEACH, WHICH IS ALL YOU ARE ATTEMPTING TO

21   DO, THE COURT THEN HAS TO BALANCE THE PROBATIVE VALUE OF THE

22   EVIDENCE REGARDING WHETHER IT'S OUTWEIGHED BY THE DANGERS.

23        IT'S A STRONG ISSUE.   THE DEFENSE, OF COURSE, IS

24   THAT THE DAMAGE OBSERVED BY MS. RITTER WAS NOT CAUSED BY THE

25   DEFENDANT.   HE, OF COURSE, HAS A CONSTITUTIONAL RIGHT TO

26   PRESENT A DEFENSE TO DENY THAT HE WAS THE ONE THAT INFLICTED

27   THIS DAMAGE.

28        THE QUESTION BECOMES, THOUGH, AS HE ATTEMPTS TO

```
 1    PRESENT EVIDENCE THAT SOMEONE ELSE DID IT, THAT'S A WHOLE
 2    DIFFERENT LINE OF CASES.
 3            MR. CAHAN:  THAT'S THE LINE OF THIRD PARTY
 4    CULPABILITY.
 5            THE COURT:  AND 1103 AND 782 AREN'T APPLICABLE IN
 6    THIS CASE BECAUSE IT'S NOT -- IT'S NOT, IF YOU WILL, AN
 7    ATTACK ON HER SEXUAL CONDUCT, IT'S AN ATTACK ON HER
 8    CREDIBILITY GOVERNED BY 780.
 9            THEN, AS YOU CORRECTLY POINTED OUT, MR. CAHAN,
10    THAT'S WHEN THE COURT NOW HAS TO GET INTO THE 352 ISSUE.
11            ON THIRD PARTY CULPABILITY, GO AHEAD, MR. CAHAN.
12            MR. CAHAN:  THANK YOU, YOUR HONOR.
13            THE COURT:  I MEAN, THERE IS EVIDENCE OF THIRD
14    PARTY CULPABILITY IN THIS CASE, BUT YOUR EVIDENCE IS NOT --
15    IT'S NOT THE KIND THAT CAUSES THIS TYPE OF TRAUMA?
16            MR. CAHAN:  YES, YOUR HONOR.
17            THE COURT:  AND THAT'S WHY YOU WANT TO KEEP IT
18    OUT?
19            MR. CAHAN:  YES.
20            THE COURT:  YOU HAVE TO AGREE THERE IS THIRD PARTY
21    CULPABILITY, NOT TO THE DEGREE THAT THE THIRD PARTY
22    SUPPOSEDLY ATTACKS THIS CHILD OR DID WHAT HE DID TO HER
23    DURING THE SAME PERIOD OF TIME THAT THE DEFENDANT DID; THIS
24    CHILD IS ABLE TO DIFFERENTIATE WHEN THE DEFENDANT WAS
25    INVOLVED AND WHEN THE STEPFATHER IS INVOLVED.  IS THAT YOUR
26    OFFER OF PROOF?
27            MR. CAHAN:  MY OFFER OF PROOF IS NOT ONLY CAN THE
28    VICTIM DISTINGUISH WHO COMMITTED WHAT CONDUCT, BUT CAN
```

```
1   DISTINGUISH THE ACTUAL CONDUCT.  AND IF I COULD HAVE PERHAPS
2   A MOMENT WITH DEFENSE, WHAT I WAS GOING TO SUGGEST --
3           THE COURT:  GO AHEAD.
4           MR. CAHAN:  -- WAS PERHAPS -- WELL, LET ME --
5           (DISCUSSIONS HELD OFF THE RECORD)
6           MR. CAHAN:  YOUR HONOR.
7           THE COURT:  ALL RIGHT.  SO --
8           MR. CAHAN:  YOUR HONOR, COULD I MAKE A SUGGESTION
9   THAT --
10          THE COURT:  FOR THE RECORD, MAKE AN OFFER OF
11  PROOF, MR. CAHAN, AS TO WHAT THE YOUNG GIRL SAID AS TO WHAT
12  THE STEPFATHER DID FOR THE PURPOSE OF THIS 402 HEARING.
13          MR. CAHAN:  THANK YOU, YOUR HONOR.
14          BOTH LOOKING AT THE ORIGINAL POLICE REPORT, THE
15  VICTIM SAYS THAT THE STEPFATHER HANDS WERE ON THE BUTTOCKS,
16  AWAKENED HER, SHE WAS CLOTHED, AND THERE WAS NEVER ANY
17  SKIN-TO-SKIN CONTACT.
18          I CAN REFER TO A --
19          THE COURT:  THAT WAS A TAKEN STATEMENT GIVEN TO
20  LAW ENFORCEMENT?
21          MR. CAHAN:  THAT WAS LAW -- THAT WAS A STATEMENT
22  GIVEN TO LAW ENFORCEMENT ON APRIL 6TH OF THIS YEAR IN
23  CONNECTION WITH THE INVESTIGATION REGARDING A POSSIBLE
24  MOLEST BY THE STEPFATHER.
25          THE COURT:  THANK YOU.
26          MR. CAHAN:  I CAN ALSO --
27          THE COURT:  NOW, THE MOLEST BY THE STEPFATHER
28  SURFACED FIRST BEFORE THESE ALLEGATIONS; IS THAT CORRECT?
```

1          MR. CAHAN:  YES, YOUR HONOR.

2          THE COURT:  GO AHEAD.

3          MR. CAHAN:  I CAN ALSO REFER TO AN INTERVIEW DONE

4  WITH THE VICTIM, A REPORT PROVIDED TO DEFENSE, DATED OCTOBER

5  3RD, OF THIS YEAR -- I'M SORRY, THAT'S THE WRONG DATE.

6          THE COURT:  HANG ON.  WHILE YOU'RE DOING THAT,

7  JUST A SECOND, I WANT TO GET SOMETHING.  JUST REMAIN SEATED.

8  GO AHEAD.

9          MR. CAHAN:  REPORTED BY DISTRICT ATTORNEY

10  INVESTIGATOR RANDY BROWN, DATED OCTOBER 3RD OF THIS YEAR,

11  WHERE THE VICTIM DENIED EVER BEING RAPED BY DEON (PHONETIC).

12          I BELIEVE THAT THAT SENTENCE, IF INVESTIGATOR

13  BROWN WERE CALLED AS A WITNESS, WOULD FURTHER ARTICULATE

14  THAT HER STATEMENT TO INVESTIGATOR BROWN WAS CONSISTENT WITH

15  THE STATEMENT TO THE LAW ENFORCEMENT OFFICER, ON APRIL 6TH,

16  THAT IT WAS ABOVE THE CLOTHING AND THAT THERE WAS NO

17  PENETRATION.

18          I ALSO ASK, MAKE THE REPRESENTATION THAT IF THE

19  VICTIM WERE CALLED, THAT I DO NOT BELIEVE SHE WOULD SAY

20  ANYTHING INCONSISTENT WITH THE TWO REPRESENTATIONS MADE BY

21  THE PEOPLE TODAY.

22          I CAN FURTHER REPRESENT THAT I DON'T BELIEVE

23  THAT -- NEVER MIND, I'LL STOP THERE.

24          THE COURT:  ALL RIGHT.

25          MR. REKOON:  I HAVE TWO DIFFERENT ACCOUNTS OF THE

26  INCIDENT WITH THE STEPFATHER, ONE HAVING DELFINA PRESENT,

27  AND ONE HAVING DELFINA NOT PRESENT.

28          THE COURT:  NOW, THESE ARE STATEMENTS THAT HAVE

1    BEEN MEMORIALIZED IN A POLICE REPORT?

2         MR. REKOON:  NO, THESE WERE STATEMENTS

3    MEMORIALIZED IN AN INTERVIEW.

4         THE COURT:  OF WHOM?

5         MR. REKOON:  WITH DELFINA AND GUADALUPE BY MY

6    INVESTIGATOR, WHICH WERE MADE AVAILABLE TO THE PROSECUTOR.

7         THE COURT:  AND WHAT DO THEY SAY?

8         MR. REKOON:  FIRST ONE SAYS, THIS IS AN INTERVIEW

9    WITH JUAN MUNOZ.

10         THE COURT:  AND HE IS?  YOU WANT TO IDENTIFY WHO

11   THESE PEOPLE ARE.  GO AHEAD.

12         MR. REKOON:  HE IS A BROTHER OF DELFINA.

13         DELFINA TOLD JUAN THAT SHE WAS IN THE KITCHEN AREA

14   HEARD GUADALUPE SCREAM FROM THE BEDROOM.  DELFINA RAN TO THE

15   BEDROOM TO GUADALUPE RUNNING, AND SAW HER -- SAW HER HUSBAND

16   FALLING OFF THE BED.

17         THE COURT:  THAT'S THE STEPFATHER?

18         MR. REKOON:  RIGHT.  NOW, WE HAVE DELFINA -- THAT

19   WAS JUAN --

20         THE COURT:  WHAT DATE DID THIS ALLEGEDLY OCCUR,

21   THE SCREAMING AND FALLING OFF THE BED?

22         MR. REKOON:  THIS WAS THE MARCH INCIDENT REGARDING

23   THE STEPFATHER.

24         THE COURT:  AND ALL THEY -- AND THIS WAS WHERE

25   JUAN SAYS HE WENT INTO THE ROOM?

26         MR. REKOON:  NO.  JUAN SAYS DELFINA SAID THAT SHE

27   WENT TO THE BEDROOM AND HEARD THE --

28         THE COURT:  DELFINA.  WHAT'S THE STATEMENT MADE?

```
1    AND SINCE SHE'S A PERCIPIENT WITNESS, WHAT DID SHE SAY?
2              MR. REKOON:  DELFINA SAYS THAT AFTER SHE GOT HOME,
3    GUADALUPE TOLD HER THAT SHE WANTED TO TALK TO HER.  THEY HAD
4    A PRIVATE CONVERSATION.  GUADALUPE TOLD DELFINA THE
5    STEPFATHER HAD LAID ON TOP OF HER ON THE BED.  SHE SAID SHE
6    WAS ABLE TO GET HIM OFF HER BECAUSE HE'S A SMALL MAN,
7    POUNDED ON HIM UNTIL HE GOT OFF.
8              SO WE HAVE DELFINA ON THE ONE HAND SAYING THAT
9    GUADALUPE TOLD HER ABOUT IT.  AND ON THE OTHER HAND, WE HAVE
10   DELFINA SAYING THAT SHE WAS PRESENT AND HEARD HER SCREAM.
11             THE COURT:  ALL RIGHT.  THAT COMES UP A LITTLE
12   SHORT, IF YOU WILL, OF EVIDENCE THAT SOMEHOW THE TRAUMA
13   OBSERVED BY MS. RITTER IS ATTRIBUTABLE TO SOMEONE ELSE OTHER
14   THAN THE DEFENDANT.
15             MR. REKOON:  WITHIN A SHORT TIME AFTER THE
16   INCIDENT WITH HER HUSBAND, JUAN -- DELFINA TOLD JUAN THAT
17   DELFINA TOOK GUADALUPE TO THE DOCTOR, AND THE DOCTOR FOUND
18   BRUISING OF THE VAGINAL AREA.  I KNOW THAT'S OUTSIDE OF IT,
19   BUT BASICALLY IT'S THE --
20             THE COURT:  THE BRUISING IS CAUSED BY WHAT?  IS
21   THERE A DOCTOR'S REPORT ON THAT?
22             MR. REKOON:  I'M ASSUMING IT'S THE SAME.
23             MR. CAHAN:  I'M ASSUMING THAT'S MS. RITTER'S
24   REPORT.
25             THE COURT:  BECAUSE IF THERE IS A PEDIATRICIAN
26   THAT EXAMINED THE CHILD.
27             MR. CAHAN:  I DON'T KNOW, YOUR HONOR.
28             MR. REKOON:  BUT, ON THE ONE HAND WE HAVE A
```

1  SCREAM; ON THE OTHER HAND, WE HAVE A STEPFATHER LAYING ON

2  TOP OF HER.

3           THE COURT:  RIGHT.  RIGHT.

4           MR. CAHAN:  NONE OF WHICH IS INCONSISTENT WITH

5  WHAT THE PEOPLE RELAYED.

6           MR. REKOON:  I THINK IT'S MORE OF A WEIGHT, RATHER

7  THAN ADMISSIBILITY QUESTION.

8           THE COURT:  WELL, IT'S THE PEOPLE'S POSITION THAT

9  IT'S AN ADMISSIBILITY ISSUE.  780 ALSO SAYS IT'S AN

10 ADMISSIBILITY ISSUE, 780 OF THE EVIDENCE CODE, IF YOU WILL;

11 AND ALSO, 352 DIRECTS THIS COURT TO DECIDE THESE ISSUES AS

12 TO WHETHER IT'S A COLLATERAL ISSUE OR WHETHER IT'S A

13 SUBSTANTIVE ISSUE.

14          IT'S SUBSTANTIVE IN THE FACT THAT IT'S AN ALLEGED

15 MOLEST BY ANOTHER MAN OTHER THAN MR. HERNANDEZ.  BUT IT IS

16 COLLATERAL IN THAT THE ONLY EVIDENCE IS THAT THERE WAS A

17 SCREAM OBSERVED BY THE MOTHER, OR HEARD; THE YOUNG GIRL

18 FULLY CLOTHED, SHE SAYS THE TOUCHING WAS ON TOP OF HER

19 CLOTHING.  SHE WAS ABLE TO DEFEND HERSELF FROM THE ATTACKER.

20          AND THAT AS THE VICTIM -- HAS THE VICTIM EVER SAID

21 AT ANY TIME, MR. CAHAN, TO ANYBODY, IN ANY REPORT, BE IT A

22 DOCTOR'S REPORT OR POLICE REPORT, THAT, IN FACT, THE

23 STEPFATHER WAS ABLE TO HAVE ANY SKIN-TO-SKIN TOUCHING OF HER

24 PRIVATE PARTS OR HER BODY IN ANYWAY?

25          MR. CAHAN:  NOT THAT THE PEOPLE ARE AWARE OF, YOUR

26 HONOR, OR AFTER CONVERSATIONS WITH THE VICTIM AND REPORTS

27 THAT I'VE RELATED TO THE COURT.

28          THE COURT:  MR. REKOON, DO YOU HAVE ANY, IN YOUR

1   STATEMENTS THAT YOU HAVE DISCLOSED TO THE PROSECUTION OR

2   STATEMENTS THAT YOU HAVEN'T DISCLOSED, IF YOU WILL, BECAUSE

3   YOU HAVEN'T DECIDED WHETHER TO CALL THESE WITNESSES, WHETHER

4   OR NOT THE VICTIM HAS GIVEN ANY EVIDENCE WHATSOEVER THAT

5   THERE WAS ANY SKIN-TO-SKIN CONTACT BETWEEN HER AND HER

6   STEPFATHER ON THE DATES IN QUESTION?

7            MR. REKOON:  NO.  ALL WE HAVE IS THE USE OF THE

8   WORD MOLEST FROM THE MOTHER TO DESCRIBE THE INCIDENT TO HER

9   BROTHER.

10            THE COURT:  AND, THE VICTIM AT THIS TIME, WHEN IT

11   OCCURRED WITH THE STEPFATHER, WAS HOW OLD, MR. CAHAN,

12   THIRTEEN OR FOURTEEN?

13            MR. CAHAN:  I'M SORRY.

14            THE COURT:  HOW OLD WAS THE VICTIM AT THE TIME

15   THAT THE STEPFATHER MAY HAVE ALLEGEDLY MOLESTED, PUT HIS

16   HAND ON HER CLOTHING?

17            MR. CAHAN:  ON MARCH 10TH OF THIS YEAR SHE WOULD

18   HAVE BEEN FOURTEEN YEARS OLD.

19            THE COURT:  YES.  FOURTEEN.  AND THAT IN AND OF

20   ITSELF WOULD NOT BE A 288(A) OFFENSE; CORRECT?

21            MR. CAHAN:  CORRECT.

22            THE COURT:  THAT WOULD BE?

23            MR. CAHAN:  A 288(C)(1), I BELIEVE.

24            THE COURT:  (C)(1).  IT'S A MOLEST OF A CHILD

25   UNDER THE AGE OF SIXTEEN, I BELIEVE.

26            OVER THE AGE OF FOURTEEN, UNDER THE AGE OF

27   SIXTEEN.

28            MR. CAHAN:  FOURTEEN AND FIFTEEN.

1    THE COURT:  I'M SORRY.  YES, FIFTEEN.

2    ALSO, THE DEFENSE THAT SOMEONE ELSE COMMITTED THE

3    CRIME, THIRD PERSON, IT REQUIRES THAT THERE BE SOME

4    SUBSTANTIAL EVIDENCE TO ALLOW THE DEFENSE TO, IF YOU WILL,

5    PLACE THE BLAME ON SOMEONE ELSE.  AND IN THOSE CASES THAT

6    TALK ABOUT THE THIRD PARTY DEFENSE, THAT IS, THE THIRD

7    PARTY'S CULPABILITY, IT ALSO SAYS TO THE TRIAL COURT THAT

8    YOU MUST ALSO BALANCE THE PEOPLE'S RIGHT TO A FAIR TRIAL.

9    AT THIS POINT, THAT IS, THE EVIDENCE OF THE THIRD PARTY HAS

10   TO HAVE SOME MERIT TO IT, IT HAS TO HAVE SOME BASIS IN FACT.

11   NOW, THERE IS SOME EVIDENCE THAT THE VICTIM

12   REPORTED AN INITIAL -- AN INITIAL, IF YOU WILL, MISBEHAVIOR

13   BY HER STEPFATHER, AND THIS WAS FOLLOWED BY AN EXAMINATION.

14   I'M CURIOUS, AFTER THE EXAMINATION BY MS. RITTER,

15   WAS THAT AT THE POINT IN TIME WHEN THE VICTIM GAVE MORE

16   DETAILS AS TO WHERE THAT TRAUMA CAME, IS THAT ATTRIBUTED TO

17   MR. HERNANDEZ AT THAT POINT?

18   MR. CAHAN:  NO, YOUR HONOR.  ALL STATEMENTS

19   REGARDING THE DEFENDANT'S CONDUCT AND THE STEPFATHER'S

20   CONDUCT WERE RELATED TO LAW ENFORCEMENT BEFORE.

21   THE COURT:  BEFORE THE RITTER EXAM?

22   MR. CAHAN:  BEFORE THE EXAMINATION.

23   THE COURT:  ALL RIGHT.

24   MR. CAHAN:  OTHER THAN OTHER INVESTIGATIVE REPORTS

25   THAT THE DISTRICT ATTORNEY OR DEFENSE INSTIGATED.

26   MR. REKOON:  THAT'S MY UNDERSTANDING AS WELL.

27   THE COURT:  ALL RIGHT.  OTHER THAN:

28   MR. CAHAN:  AS AN ASIDE, YOUR HONOR --

```
 1                    THE COURT:  GO AHEAD.

 2                    MR. CAHAN:  -- IF THE COURT WOULD LIKE OR REQUIRES

 3       PAPERS ON THIRD PARTY CULPABILITY?

 4                    THE COURT:  NO, I'M FAMILIAR WITH THAT CASE.  I

 5       KNOW IT'S PEOPLE VERSUS HALL, H-A-L-L, AND WALKER.

 6                    MR. CAHAN:  YES, SIR.

 7                    THE COURT:  I NOTED THAT YOU CITED THEM IN THE

 8       YOUR PAPERS.

 9                    THE GUIDELINES OF THE CALIFORNIA SUPREME COURT, ON

10       THE THIRD PARTY CULPABILITY, AS STATED BY PEOPLE VERSUS

11       HALL, IT SAYS, EVIDENCE OF MERE MOTIVE OR OPPORTUNITY TO

12       COMMIT THE CRIME WITHOUT MORAL, WILL NOT SUFFICE.

13                    CLEARLY, THERE WAS OPPORTUNITY IN THIS CASE, AS

14       OBSERVED BY MRS. MUNOZ, HAS SHE BEEN ASK AS TO WHETHER OR

15       NOT SHE MADE THOSE STATEMENTS, AND, IN FACT, SHE --

16                    MR. CAHAN:  NO ONE HAS.  NO ONE FROM THE PEOPLE

17       HAVE ASKED HER REGARDING THE STATEMENTS THAT DEFENSE HAS

18       ALLUDED TO.

19                    THE COURT:  LET'S ASSUME THAT SHE'S TELLING THE

20       TRUTH OF THAT, WHETHER OR NOT THE BALANCING -- AS THE COURT

21       SEES IT WHETHER OR NOT THE JURY WOULD FIND THAT IF THERE

22       WAS -- IF THE COURT WERE TO ALLOW, BY THE VICTIM AND HER

23       FAMILY, THAT THE STEPFATHER ON ONE PARTICULAR OCCASION WAS

24       ON TOP OF THE VICTIM, FULLY CLOTHED, BOTH FULLY CLOTHED, NO

25       SKIN-TO-SKIN CONTACT, NO REPORTS BY THE VICTIM TO ANYONE

26       EITHER IN THE MEDICAL FIELD OR THE LEGAL FIELD, THAT IS

27       POLICE, ET CETERA, OR ATTORNEYS, OR INVESTIGATORS, THAT

28       THERE WAS SKIN-TO-SKIN CONTACT.
```

1      MR. REKOON:  THERE WAS A REPORT, BUT NOT ON

2  SKIN-TO-SKIN CONTACT.

3      THE COURT:  RIGHT.  SKIN-TO-SKIN CONTACT - WOULD

4  THAT EVIDENCE BE SUFFICIENT TO RAISE A REASONABLE DOUBT AS

5  TO WHETHER OR NOT THE DEFENDANT WAS RESPONSIBLE FOR THE

6  DAMAGE OBSERVED BY MS. RITTER?

7      MR. CAHAN:  AND, YOUR HONOR, JUST TO BE CLEAR, THE

8  DAMAGE VIEWED BY MS. RITTER IS PENETRATING TRAUMA.

9      THE COURT:  IS PENETRATING TRAUMA?

10      MR. CAHAN:  YES, SIR.

11      THE COURT:  WOULD YOU AGREE TO THAT, MR. REKOON,

12  THAT THE EVIDENCE BY MS. RITTER, IF SHE WERE TO TESTIFY, I

13  MEAN, YOU DON'T HAVE TO NECESSARILY AGREE THAT SHE'S AN

14  EXPERT AND CAN TESTIFY WITH SUFFICIENT KNOWLEDGE ABOUT THAT,

15  BUT THAT SHE DID OBSERVE SOME TYPE OF TRAUMA SHE BELIEVES

16  WAS CAUSED BY PENETRATION EITHER BY BODY PARTS OR FOREIGN

17  OBJECT?

18      MR. REKOON:  YEAH, I WOULD NOT STIPULATE TO IT,

19  BUT I WOULD AGREE THAT THAT WOULD BE WHAT HER FINDING WOULD

20  BE.  THE QUESTION WOULD BE WHO AND WHEN.

21      THE COURT:  EXACTLY.  AND YOUR DEFENSE IS IT

22  WASN'T MR. HERNANDEZ, IT WAS THE STEPFATHER.  BUT THE

23  EVIDENCE CLEARLY BEFORE THIS COURT AT THIS DATE AND TIME, ON

24  THIS MOTION, CLEARLY INDICATES THAT IT COULD NOT HAVE BEEN

25  THE STEPFATHER, FROM EVERYTHING THE COURT HAS BEFORE IT AT

26  THIS TIME, THAT IT COULD NOT HAVE BEEN THE STEPFATHER TO

27  CAUSE THAT TYPE OF TRAUMA.

28      MR. REKOON:  ONLY IF IT ACCEPTS THE WORD.

1     THE COURT:  WELL, I HAVE TO ACCEPT THE WORDS THAT

2  YOU HAVE GIVEN THE COURT AS AN OFFICER OF THE COURT.  AND AS

3  AN OFFER OF PROOF, YOU HAVE GIVEN ME EVIDENCE THAT, IN FACT,

4  NOTHING HAPPENED OTHER THAN THE SCREAM OBSERVED BY THE

5  MOTHER, OR HEARD BY THE MOTHER, AND THE GIRL HERSELF WHO

6  SAYS, QUOTE, THERE WAS JUST A TOUCHING OUTSIDE HER CLOTHING,

7  NO SKIN-TO-SKIN.

8     NOW, I HAVE TO ASSUME THAT'S TRUE FOR PURPOSES OF

9  THIS MOTION.  AND THERE IS NOTHING ELSE TO SUPPORT THE FACT

10  THAT THE STEPFATHER WAS RESPONSIBLE FOR THE TRAUMA INFLICTED

11  ON THIS CHILD.

12     MR. REKOON:  ONE LITTLE THING MIGHT HAVE BEEN

13  THROWN IN THE MIX, I DON'T KNOW IF IT WOULD BE RELEVANT OR

14  NOT.

15     THE COURT:  GO AHEAD.

16     MR. REKOON:  WE HAVE EVIDENCE THAT AT SOME TIME

17  AFTERWARDS DELFINA REPORTED TO OUR INVESTIGATOR, AND TO

18  JUAN, THAT THE HUSBAND HAD OFFERED HER A THOUSAND DOLLARS TO

19  WITHDRAW THE CHARGES.

20     THE COURT:  ALL RIGHT.  THE CHARGES THAT HE HAS

21  BEEN ACCUSED OF?

22     MR. REKOON:  RIGHT.

23     THE COURT:  TO YOUR KNOWLEDGE, HAS HE BEEN

24  ARRESTED OR CHARGED WITH ANY OFFENSE?

25     MR. REKOON:  NO KNOWLEDGE.  HE HAS FLED THE

26  COUNTRY.

27     MR. CAHAN:  MORE THAN THAT, YOUR HONOR, THE

28  DISTRICT ATTORNEY APPARENTLY WAS PROVIDED THE POLICE REPORT

```
 1   AND DECLINED TO ISSUE A COMPLAINT.

 2          THE COURT:  ALL RIGHT.

 3          MR. CAHAN:  SO ONE HAS LITTLE OR NOTHING TO DO

 4   WITH THE OTHER.

 5          THE COURT:  CORRECT.  ON THIS ISSUE THEN,

 6   MR. CAHAN, ANYTHING FURTHER?

 7          MR. CAHAN:  ON THIS PARTICULAR ISSUE, ON THIS

 8   PARTICULAR CONDUCT, NO.

 9          THE COURT:  ALL RIGHT, MR. REKOON.

10          MR. CAHAN:  SUBMITTED.

11          THE COURT:  ANYTHING FURTHER?

12          MR. REKOON:  SUBMITTED.

13          THE COURT:  ALL RIGHT.  IN BALANCING THE

14   DEFENDANT'S RIGHT TO A FAIR TRIAL, AND THE PEOPLE'S RIGHT TO

15   A FAIR TRIAL, THE COURT WILL EXCLUDE AND MAKE A RULING UNDER

16   352 OF THE EVIDENCE CODE, THAT IT'S GOING TO EXCLUDE ANY

17   TESTIMONY FROM DELFINA MUNOZ, GUADALUPE MUNOZ, OR JUAN MUNOZ

18   REGARDING ANY OTHER SEXUAL CONDUCT THAT OCCURRED BETWEEN THE

19   VICTIM AND THE STEPFATHER.

20          AND WHAT THE COURT MEANS BY SEXUAL CONDUCT, UNDER

21   CONSENSUAL SEXUAL CONDUCT, THIS COURT FINDS THAT 1103 AND

22   782 WERE NOT APPLICABLE.  BUT THAT 780 AND 352 OF THE

23   EVIDENCE CODES -- OF THE EVIDENCE CODE, EXCUSE ME, ARE THE

24   CONTROLLING SECTIONS.  AND THE COURT WILL NOT ALLOW ANY

25   TESTIMONY IN THAT AREA.

26          THE COURT, HOWEVER, WILL ALLOW, IF, AS CORRECTLY

27   POINTED OUT BY MR. CAHAN, MS. MUNOZ' MOTIVE IN WHICH SHE

28   WOULD TESTIFY, OR THE YOUNG WOMAN WOULD TESTIFY IN THE
```

1    MANNER IN WHICH THEY WOULD TESTIFY WOULD BE THE FACT THAT IT

2    WOULD BE A RETALIATION AGAINST MR. HERNANDEZ FOR HIS

3    EVICTION OF THEM FROM THEIR RESIDENCE IN QUESTION.

4              MR. CAHAN, ANYTHING ELSE?

5              MR. CAHAN:  YES, YOUR HONOR.

6         THE COURT:  GO AHEAD.

7              MR. CAHAN:  IN THE SAME VAIN, AND I DON'T KNOW

8    WHETHER THE DEFENSE IS PREPARED TO OFFER THIS, BUT IT IS IN

9    ONE OF THE DEFENSE REPORTS, THERE IS AN ALLEGATION THAT THE

10   SON OF SOMEBODY, WHO HAD CARE OF THE VICTIM, LAY ON TOP OF

11   THE VICTIM AT ONE POINT.

12             MR. REKOON:  WE DON'T HAVE CONFIRMATION OF THAT,

13   SO I DON'T INTEND TO GET INTO IT.

14             MR. CAHAN:  WITH THAT REPRESENTATION, THAT'S FINE,

15   YOUR HONOR.

16             THE COURT:  WITH THE REPRESENTATION THAT THAT WILL

17   NOT BE EXPLORED, THANK YOU.

18             MR. REKOON:  ALSO, WE DON'T -- I THINK I CAN CUT

19   HIM OFF AT THE PASS HERE.  WE DON'T INTEND TO GET INTO ANY

20   ALLEGED MENTAL ILLNESS ON THE PART OF DELFINA AS ALLEGED

21   WHICH MAKES HER A LITTLE OFF.  ALL WE HAVE IS ANTIDOTAL

22   TESTIMONY OF THAT AND NOTHING TO BACK IT UP.  SO WE'RE NOT

23   GOING TO GO INTO THAT AREA.

24             THE COURT:  THANK YOU.  SO ORDERED.

25             MR. CAHAN:  THAT WAS ONE OF THEM.  THANK YOU, YOUR

26   HONOR.  AND THANK YOU, COUNSEL.

27             ALSO, THERE IS AN ALLEGATION AND STATEMENTS IN

28   DEFENSE REPORTS THAT SAY THAT THE VICTIM WAS WATCHING

1    PORNOGRAPHY.

2              THE COURT:  WELL, THAT'S GOING TO REQUIRE, THEN,

3    IF YOU WILL, SOME TYPE OF PRESENTATION UNDER 782 IN WRITING.

4              MR. CAHAN:  THIS IS THE PEOPLE'S POINT.

5              THE COURT:  SINCE THAT HASN'T BEEN PRESENTED.

6              MR. REKOON:  I DON'T INTEND TO GET INTO THAT SINCE

7    IT WAS TIED INTO THE SON ALLEGEDLY LAYING ON TOP OF,

8    INVOLVING THE SAME PEOPLE AND SAME PARTIES, AND, AGAIN, NO

9    CONFIRMATION.

10              THE COURT:  THANK YOU.  ALL RIGHT.  SO ORDERED

11    THEN, NOT TO BE EXPLORED.

12              MR. CAHAN:  THANK YOU, COUNSEL.

13              AND THERE ARE OTHER STATEMENTS THAT I WOULD ASK TO

14    BE EXCLUDED.  THERE IS A STATEMENT BY JUAN AND GUILLMIAWA,

15    G-U-I-L-L-M-I-A-W-A, HERNANDEZ, WITH A "Z," THAT THE MOTHER,

16    DELFINA, KICKED OUT OTHER TENANTS AT ONE RESIDENCE.  IT'S

17    CHARACTER EVIDENCE THAT HAS NO RELEVANCE TOWARDS ANYTHING

18    AND I'D ASK THAT IT NOT BE --

19              MR. REKOON:  I WASN'T PLANNING ON SUBMITTING THAT.

20              THE COURT:  THAT'S NOT BEING EXPLORED AS WELL.

21              MR. CAHAN:  THERE ARE ALLEGATIONS THAT DELFINA HAS

22    HIT HER CHILDREN.  AND THAT GUADALUPE HAS RUN AWAY.  I DON'T

23    SEE ANY RELEVANCE TO THAT.

24              MR. REKOON:  ONLY IF IT GOES INTO, IN TERMS OF

25    MR. HERNANDEZ'S INTERVIEW WITH THE POLICE OFFICER REGARDING

26    HIS DISCIPLINING THE KIDS.

27              MR. CAHAN:  I CAN REPRESENT THAT THE PEOPLE HAVE

28    NO INTENTION OF INTRODUCING THE DEFENDANT'S STATEMENT TO THE

```
1   POLICE AT THIS TIME.

2           IF THE DEFENDANT TESTIFIES, BEFORE I ASK ANY

3   QUESTIONS REGARDING HIS CONDUCT AND ITS CONSEQUENCES, I WILL

4   APPROACH THE BENCH.

5           MR. REKOON:  WILL THERE BE ANY EXPLORATION AT ALL

6   INTO MR. HERNANDEZ DISCIPLINING THE CHILDREN THROUGH DIRECT

7   QUESTIONING OF GUADALUPE?

8           MR. CAHAN:  NOT AT THIS TIME, BUT CERTAINLY

9   POSSIBLE.  WHAT'S THE RELEVANCE OF THE DEFENDANT

10  DISCIPLINING THE CHILDREN AS OPPOSED TO THE MOTHER?  THE

11  PEOPLE STILL FAIL TO SEE --

12          THE COURT:  MR. REKOON.

13          MR. REKOON:  IT'S OUR POSITION THAT THE MOTHER

14  GAVE UP HER RESPONSIBILITY TO DISCIPLINE THE CHILDREN TO

15  MR. HERNANDEZ BECAUSE SHE COULDN'T.

16          THE COURT:  ALL RIGHT.  AND THEN, BUT HIS

17  DISCIPLINE WOULD INVOLVE -- I MEAN, IN TERMS OF GUADALUPE

18  RUNNING AWAY FROM THE HOUSE.

19          MR. REKOON:  SHE RAN AWAY FROM HER MOM'S

20  DISCIPLINING, NOT FROM MR. HERNANDEZ'S DISCIPLINE.

21          THE COURT:  WAS THIS BEFORE SHE AND MR. HERNANDEZ

22  LIVED TOGETHER?

23          MR. REKOON:  THIS WAS WHILE THEY WERE LIVING

24  TOGETHER.

25          THE COURT:  WAS SHE TAKEN TO THE CHILDREN'S

26  SHELTER?

27          MR. REKOON:  I DON'T KNOW IF SHE WAS TAKEN TO A

28  CHILDREN'S SHELTER.  I DON'T THINK SO.
```

1        MR. CAHAN:  I DON'T BELIEVE SO EITHER, YOUR HONOR.

2        THE COURT:  WELL, HER RUNNING AWAY FROM HER

3   MOTHER'S DISCIPLINE WOULD REFLECT WHAT MATERIAL FACT IN

4   DISPUTE?  WHAT WOULD THAT HELP TO PROVE AS FAR AS THE

5   DEFENSE IS CONCERNED, THE FACT THAT HER MOTHER DISCIPLINED

6   HER AND SHE MAY HAVE RUN AWAY FROM HER MOTHER'S DISCIPLINE?

7        MR. REKOON:  IT WOULD ONLY BE REACTIVE IF IT WAS

8   ATTEMPTED TO SHOW IN A NEGATIVE LIGHT THAT MR. HERNANDEZ WAS

9   RESPONSIBLE FOR THE DISCIPLINE OF THE CHILDREN.  AND THE

10  REASON THAT HE WAS RESPONSIBLE FOR THE DISCIPLINE WAS THAT

11  THE MOTHER BASICALLY ABDICATED BECAUSE SHE COULDN'T CONTROL

12  THE KIDS.  SO IT WOULD ONLY BE AN ATTEMPT TO CLEAN UP IF

13  THERE IS ANY ALLEGATION OF --

14       THE COURT:  IT REALLY IS VERY COLLATERAL ABOUT

15  DISCIPLINE.  IF THE D.A. ATTEMPTS TO SOMEHOW PRESENT TO THE

16  JURY EVIDENCE THAT THE DISCIPLINE INVOLVED IN THIS CASE BY

17  MR. HERNANDEZ WAS SUCH THAT HE THOUGHT IT WAS DISCIPLINE,

18  BUT THE VICTIM THOUGHT IT WAS MOLESTATION, WELL, THEN,

19  THAT'S AN ISSUE FOR THE JURY TO DECIDE.

20       MR. CAHAN:  YOUR HONOR, JUST SO THE COURT HAS ALL

21  THE FACTS, THE ONLY WAY I CAN SEE THAT, I'M ALMOST SURE THAT

22  THE DEFENDANT'S CONDUCT OTHER THAN SEXUAL TOWARDS THE VICTIM

23  MAY COME IN.  THAT I ANTICIPATE.  BUT CERTAINLY IT CAME IN

24  DURING THE PRELIMINARY EXAMINATION THAT THE VICTIM WAS

25  SCARED OF THE DEFENDANT, THAT THE DEFENDANT MADE THREATS IN

26  REGARDS TO HER TELLING ANYBODY, AND SHE BELIEVED THOSE

27  THREATS BECAUSE HE HAD BEEN VIOLENT BEFORE.  SO I THINK THAT

28  THE ALLEGATIONS REGARDING HIS CONDUCT WILL COME IN.

```
1            THE COURT:  WHAT I'LL HAVE TO DO, GENTLEMEN, I'M
2   NOT GOING TO MAKE ANY PRELIMINARY RULING SAYING IT CAN OR
3   CAN'T COME IN.  I'LL HAVE TO WAIT AND SEE ON A QUESTION AND
4   ANSWER BASIS, AND WHAT YOU INTEND TO CROSS-EXAMINE ON.  AND
5   IT MAY COME IN, YOU ARE RIGHT.  BUT I WOULDN'T EXCLUDE IT AT
6   THIS POINT, BUT I DON'T INCLUDE IT, WE'LL JUST SEE HOW IT
7   WORKS OUT.
8            MR. CAHAN:  THANK YOU, YOUR HONOR.
9            THE COURT:  ALL RIGHT.
10           MR. CAHAN:  EXCUSE ME, THERE IS A DEFENSE REPORT
11  PROVIDED TO THE PEOPLE WITH AN ALLEGATION THAT THE VICTIM
12  HAD SOME TRADING CARDS OF SOME FRIENDS, AND THAT SHE NEVER
13  RETURNED THE CARDS, BUT THE FRIENDS NEVER FOLLOWED UP ON IT.
14           THE COURT:  ALL RIGHT.
15           MR. CAHAN:  THE PEOPLE WOULD SEEK TO EXCLUDE THAT.
16  IT DOESN'T SPEAK TOWARDS ANYTHING, ESPECIALLY SINCE THE
17  FRIEND NEVER FOLLOWED UP EVEN IF TRUE.
18           THE COURT:  THAT DOES APPEAR TO HAVE SOME
19  COLLATERAL ASPECTS TO IT.
20           MR. REKOON:  IT WOULD ONLY IMPACT DIRECTLY --
21           THE COURT:  THESE ARE CHILDREN WITH TRADING CARDS?
22           MR. REKOON:  -- HER CREDIBILITY.
23           THE COURT:  WHAT WOULD THE ISSUE BE, THESE ARE
24  YOUNGSTERS THAT ARE INVOLVED IN TRADING POKEMON CARDS OR
25  WHAT?
26           MR. CAHAN:  IT JUST SAID TRADING CARDS.
27           THE COURT:  TRADING CARDS.  YOU KNOW, THERE ARE
28  TRADING CARDS, AND THEN THERE ARE ROOKIE BASEBALL CARDS OF
```

```
1    CERTAIN PERSONS THAT ARE WORTH QUITE A BIT OF MONEY.
2            IF IT'S THESE POKEMON CARDS THAT CHILDREN TRADE,
3    THOSE -- APPARENTLY, THAT'S THE LATEST THING TO DO.  ALSO,
4    TO TRADE, TAKE THEM TO SCHOOL AND TRADE, AND SHOW AND TELL.
5    SCHOOLS HAVE SPECIAL DAYS NOW WHERE THEY DO ALL THIS.  I
6    MEAN, IF THIS IS A CHILD TAKING TO SCHOOL CARDS TO FRIENDS
7    AND THEY ARE NOT RETURNED, BUT THE FRIENDS DON'T ASK FOR
8    THEM, I DON'T SEE A CREDIBILITY ISSUE.  IT JUST LOOKS TO BE
9    STANDARD BEHAVIOR AND CONDUCT WITH KIDS THIS DAY AND AGE.
10           MR. REKOON:  THERE IS TOO MANY CONFLICTS.
11           THE COURT:  THAT'S JUST A COLLATERAL SIDE ISSUE,
12   THAT IT WOULD REALLY -- IF IT WERE EVER TO COME UP, I'D
13   SUSTAIN AN OBJECTION TO THAT TYPE OF A QUESTION.
14           MR. CAHAN:  THANK YOU, YOUR HONOR.
15           THERE IS ALSO A REPORT THAT'S BEEN VERIFIED --
16   THERE'S ALSO A REPORT BY A JUDIT, J-U-D-I-T, AGUILAR,
17   A-G-U-I-L-A-R, THAT DELFINA WAS PREGNANT.  PEOPLE SEE NO
18   RELEVANCE TO THAT.
19           THE COURT:  AGREED.
20           MR. REKOON:  I DON'T SEE US GETTING INTO THAT
21   BECAUSE IT'S HEARSAY, UNSUBSTANTIATED.
22           MR. CAHAN:  THANK YOU.
23           THERE IS ALSO A REPORT BY MIGUEL MUNOZ, M-U-N-O-Z,
24   THAT DELFINA, THE MOTHER, AND THE BROTHER OF THE VICTIM,
25   JOSE, HAD AN ARGUMENT WHERE THERE WAS A CONFLICT, AND THE
26   BROTHER, THE SON OF -- BROTHER OF DELFINA SAID, HIT ME, AND
27   I THINK THERE WAS SOME PHYSICAL CONTACT.
28           THE COURT:  BETWEEN THE MOTHER AND HER SON?
```

```
 1              MR. CAHAN:  YES, YOUR HONOR.

 2              THE COURT:  AND THAT WOULD --

 3              MR. CAHAN:  YES.  FINALLY, DELFINA HIT HIM MANY

 4    TIMES.  THE PEOPLE SEE NO RELEVANCE TOWARDS --

 5              THE COURT:  WELL --

 6              MR. CAHAN:  -- TOWARDS THE BROTHER.

 7              THE COURT:  I TEND TO AGREE.  I DON'T SEE HOW

 8    THAT, UNLESS IT'S OFFERED AS SOME TYPE OF CIRCUMSTANTIAL

 9    EVIDENCE, THE JURY CAN INFER THAT DELFINA, THE MOTHER, WAS

10    RESPONSIBLE FOR THE TRAUMA, DAMAGE TO THE CHILD.

11              MR. CAHAN:  THE ONLY DAMAGE WE'RE TALKING ABOUT IS

12    IN THE VAGINAL AREA.

13              THE COURT:  THAT'S A STRETCH TO SAY THAT THE

14    BROTHER'S DISCIPLINE OF HER SON, WOULD THIS SON BE OLDER OR

15    YOUNGER THAN THE VICTIM?  I ASSUME IT'S HER BROTHER.

16              MR. CAHAN:  IT'S HER BROTHER.

17              THE COURT:  MR. REKOON, ARE YOU GOING TO ASK

18    MS. MUNOZ, IF SHE TESTIFIES, ABOUT HER DISCIPLINE OF HER SON

19    OTHER THAN HER DAUGHTER?

20              MR. REKOON:  NO, I'M NOT GOING TO GO INTO THAT.

21              MR. CAHAN:  THANK YOU, YOUR HONOR.

22              THE COURT:  ALL RIGHT.

23              MR. CAHAN:  AND THEN, LASTLY, IN TERMS OF

24    STATEMENTS.  THERE IS A STATEMENT BY ANGELINA HERNANDEZ THAT

25    SHE OFFERED -- SHE TOLD THE DEFENDANT THAT IF THESE

26    ACCUSATIONS ARE TRUE, TAKE TWO THOUSAND DOLLARS AND GO TO

27    MEXICO.  AND THE DEFENDANT'S STATEMENT WAS, NO, I WILL LET

28    THE LAW TAKE CARE OF THIS.  THAT IS A PURE HEARSAY
```

```
1    STATEMENT.
2            THE COURT:  WELL, IT'S SELF-SERVING.  UNDER
3    EVIDENCE CODE 1220 IT'S INADMISSIBLE.  PEOPLE VERSUS
4    WILLIAMS.
5            MR. REKOON:  ONLY IF MY CLIENT TESTIFIES.
6            MR. CAHAN:  IF THE DEFENDANT WANTS TO TESTIFY.
7            THE COURT:  OH, IF HE WANTS TO TESTIFY, OBVIOUSLY.
8    BUT IF HE DOESN'T, UNDER PEOPLE VERSUS WILLIAMS, AND 1220 OF
9    THE EVIDENCE CODE, IT'S INADMISSIBLE.
10           MR. CAHAN:  THANK YOU, YOUR HONOR.  I WILL
11   CERTAINLY TRUST COUNSEL TO ADMONISH HIS VARIOUS WITNESSES
12   THAT THESE STATEMENTS THAT THE COURT HAS RULED HAVE BEEN
13   RULED INADMISSIBLE.
14           AND THEN, LASTLY, I BELIEVE THAT THERE IS GOING TO
15   BE A STIPULATION REGARDING THE DEFENDANT'S DATE OF BIRTH,
16   WHICH IS APRIL 4TH, 1954.
17           THE COURT:  ALL RIGHT.
18           MR. CAHAN:  I HAVE PROVIDED A RECORD FROM THE
19   CALIFORNIA DEPARTMENT OF MOTOR VEHICLES TO DEFENSE.  AND I
20   BELIEVE WE'VE DECIDED TO STIPULATE TO THAT RATHER THAN TAKE
21   THE COURT'S TIME IN REGARDING --
22           THE COURT:  DO IT IN FRONT OF THE JURY.
23           MR. REKOON:  THAT'S CORRECT.  AND I'LL STIPULATE
24   HIS DATE OF BIRTH IS --
25           THE COURT:  APRIL 4TH OF '54.
26           MR. REKOON:  APRIL 4, '54.
27           THE COURT:  ALL RIGHT.
28           MR. CAHAN:  YOUR HONOR, THAT I BELIEVE IS ALL THE
```

```
 1   PEOPLE HAVE IN REGARDS TO MOTIONS BEFORE THIS COURT AT THIS
 2   TIME.
 3            THE COURT:  ALL RIGHT.
 4            MR. REKOON, DO YOU HAVE ANYTHING ELSE?
 5            MR. REKOON:  NO.  AGAIN, OURS WERE BASED --
 6            THE COURT:  LET ME ASK YOU SOMETHING.  THE
 7   IN-CUSTODY ISSUE, YOU WANT ME TO BRING IT UP IN THE VERY
 8   BEGINNING OR JUST WAIT UNTIL IT BECOMES AN ISSUE, THEN
 9   ADDRESS IT?  HOW DID YOU WANT TO DO THAT?
10            MR. REKOON:  I'D FEEL MORE COMFORTABLE IF IT WAS
11   BROUGHT UP RIGHT IN THE BEGINNING.
12            THE COURT:  I WILL.  I SIMPLY WILL SAY HE'S IN
13   CUSTODY.  BECAUSE I READ THE INSTRUCTION THAT THEY ARE NOT
14   TO INFER CULPABILITY FROM THAT.  THE FACT HE'S IN CUSTODY
15   MEANS THAT HE JUST COULDN'T AFFORD BAIL.
16            MR. REKOON:  DO YOU TELL HIM WHAT THE BAIL IS?
17            THE COURT:  YOU DON'T WANT TO DO THAT?  I'M NOT
18   GOING TO DO THAT.
19            ALL RIGHT.  WE HAVE A PANEL COMING IN AT 1:30.
20   WE'LL START SELECTION THIS AFTERNOON.
21            MR. CAHAN:  COULD WE GO OFF THE RECORD?
22            THE COURT:  SURE.
23            (DISCUSSIONS HELD OFF THE RECORD)
24            THE COURT:  SEE YOU BACK AT 1:30.
25            (NOON RECESS WAS TAKEN)
26
27
28
```

```
 1    SUNNYVALE, CALIFORNIA                    DECEMBER 5, 2000
 2                    AFTERNOON PROCEEDINGS
 3              (JURY SELECTION PROCESS)
 4              (THE PROSPECTIVE JURORS WERE DULY SWORN TO ANSWER
 5    QUESTIONS PERTAINING TO THEIR QUALIFICATIONS TO ACT AS
 6    JURORS)
 7              (TWELVE PROSPECTIVE JURORS WERE SEATED)
 8              (THERE FOLLOWED THE VOIR DIRE EXAMINATION OF THE
 9    PROSPECTIVE JURORS)
10              (COURT ADJOURNED FOR THE EVENING)
11              (COURT TO RECONVENE WEDNESDAY, DECEMBER 6, 2000,
12    AT NINE O'CLOCK IN THE MORNING)
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

# EXHIBIT 2

1          IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

2                      SIXTH APPELLATE DISTRICT

3                          ---oOo---

4

5    THE PEOPLE OF THE STATE OF          )         COPY
     CALIFORNIA,                         )
6                                        )
             PLAINTIFF-RESPONDENT,       )
7                                        )
                 VS.                     )    CASE NO. EE014916
8                                        )
     ISIDRO HERNANDEZ,                   )
9                                        )
             DEFENDANT-APPELLANT.        )
                                         )

10

11                         ---oOo---

12              REPORTER'S TRANSCRIPT ON APPEAL

13         FROM THE JUDGMENT OF THE SUPERIOR COURT

14          OF THE STATE OF CALIFORNIA, IN AND FOR

15                THE COUNTY OF SANTA CLARA

16        BEFORE THE HONORABLE RONALD T. LISK, JUDGE

17                         ---oOo---

18

19          PROCEEDINGS HELD ON DECEMBER 6, 2000

20                PAGES 40 THROUGH 147

21                     VOLUME TWO

22

23   APPEARANCES:

24   FOR PLAINTIFF-RESPONDENT:     OFFICE OF THE ATTORNEY GENERAL
                                   BY:  WILLIAM LOCKYER, ATTORNEY
25                                 GENERAL OF THE STATE OF
                                   CALIFORNIA
26

27   FOR DEFENDANT-APPELLANT:      IN PROPRIA PERSONA

28

```
1              THE COURT:  IF MEMORY SERVES ME CORRECTLY.  AS I

2    RECALL LAST SUMMER, THIS WAS A CASE THAT I WAS ACTUALLY

3    HANDLING FOR JUDGE SCHNEIDER.

4              MR. CAHAN:  YES, YOUR HONOR.

5              THE COURT:  I SEE.  I KNEW I REMEMBERED THIS

6    DEFENDANT.  HAS HE EVER BEEN INVOLVED IN EFFORTS TO

7    NEGOTIATE OR TRY TO RESOLVE IT.

8              MR. CAHAN:  NO, YOUR HONOR.

9              THE COURT:  I KNOW, BECAUSE JUDGE SCHNEIDER WAS

10   NOT HERE, AND IT WAS A TIME NOT WAIVED PRELIM; AND THIS

11   COURT DID THE PRELIM.  LET'S SEE.  HE APPEARED ON AUGUST 21

12   IN FRONT OF JUDGE SCHNEIDER FOR ARRAIGNMENT; I ASSUME.  SET

13   FOR JURY TRIAL SEPTEMBER 2, IN FRONT OF JUDGE SCHNEIDER.

14              AND THEN HE PUT IT IN THIS DEPARTMENT FOR TRIAL ON

15   OCTOBER 10TH.  AND THEN OCTOBER 10TH IT WAS PUT IN HERE FOR

16   TRIAL FOR DECEMBER 4TH.

17              SO, WAS IT DISCUSSED BEFORE JUDGE SCHNEIDER AS TO

18   POSSIBLE RESOLUTION?

19              MR. CAHAN:  YES, YOUR HONOR.

20              THE COURT:  AND, MR. REKOON, THE DEFENDANT WAS

21   OFFERED WHAT?  I CAN'T UNDERSTAND.

22              MR. REKOON:  THERE WAS NO FORMAL OFFER, PER SE.

23   WE TALKED AROUND THE EDGES --

24              THE COURT:  ALL RIGHT.

25              MR. REKOON:  -- OF POSSIBLE RESOLUTION.  OF

26   POSSIBLY AMENDING THE COMPLAINT TO STRIKE THE LIFE COUNT AND

27   SUBSTITUTE ANOTHER 288(A), WITH LOOKING AT SOMEWHERE OF

28   THIRTY-TWO TO FORTY YEARS.  I DID APPROACH MR. HERNANDEZ
```

```
 1   BRIEFLY ON THAT, BUT HE ADVISED ME THAT, HIS WORDS, HE WAS
 2   INNOCENT AND WE WOULD NOT ACCEPT ANY OFFER.
 3           IS THAT A CORRECT STATEMENT?
 4           THE DEFENDANT:  CORRECT.
 5           THE COURT:  ALL RIGHT.  NO, I JUST WANTED TO KNOW
 6   SO THAT THERE ISN'T SOME ACCUSATIONS LATER ON DOWN THE LINE
 7   IF THERE'S A CONCERN OF INCOMPETENCY BECAUSE HE DIDN'T TRY
 8   TO SETTLE THE CASE.  THAT'S BEEN DONE AND THE DEFENDANT HAS
 9   INDICATED HE WISHES TO EXERCISE HIS CONSTITUTIONAL RIGHT.
10   SO, AS WE SAY, SO BE IT.  ALL RIGHT, GENTLEMEN,
11   SEE YOU BACK HERE AT 1:30 THEN.
12           MR. CAHAN:  YES, YOUR HONOR.
13           (OFF THE RECORD)
14           (NOON RECESS WAS TAKEN)
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```